IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESTATE OF LARRY McKINNEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-cv-04602 |
| | ) |
| ANTHONY PANICO, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT, MICHAEL PANICO'S MOTION FOR SUMMARY JUDGMENT AS TO COUNTS II, IV, XII AND XIV OF AMENDED COMPLAINT AGAINST HIM**

Defendant, Michael Panico, by his counsel, O'Donnell Callaghan LLC, pursuant to Fed. R. Civ. P. 56, hereby moves for summary judgment as to plaintiff's, Larry McKinney, Jr. as personal representative of the Estate of Larry A. McKinney, Sr. and as trustee of the Larry A. McKinney Sr. Living Trust dated October 5, 2017 ("plaintiff"), claims against him in Counts II, IV, XII, and XIV of its Amended Complaint. In support thereof, Michael states as follows:

Plaintiff's claims alleging Michael Panico ("Michael") participated in any scheme to defraud or deprive Larry A. McKinney, Sr. ("McKinney") of his "investments" are speculative and false. There is no genuine dispute as to any material fact regarding Michael's utter lack of awareness of, let alone involvement with, any of the activity alleged in the complaint—even assuming, for the sake of this argument, such other activity took place. Therefore, Michael is entitled to judgment as a matter of law on plaintiff's claims against him, as detailed below. *See*, Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**OVERVIEW AND LEGAL STANDARD**

The Court may grant summary judgment for a defendant who shows there is no genuine issue of material fact and he is entitled to judgment on the plaintiff's claims against him as a matter of law. Fed. R. Civ. P. 56(a); *see also*, *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934, 939-40 (7th Cir.

2021) (granting summary judgment in favor of defendant on claim for fraud where plaintiff failed to provide sufficient evidence from which a reasonable jury could find in its favor). "Summary judgment is the proverbial 'put up or shut up' moment in a lawsuit." *Id.*, at 940.

On a motion for summary judgment, the Court considers the entire record, drawing all reasonable inferences and resolving all factual disputes in favor of the respondent. *Valance v. Wisel*, 110 F.3d 1269, 1274 (7th Cir. 1997). The existence of an immaterial factual dispute will not preclude summary judgment. *Id.* at 1274-75. The non-moving party is entitled to "the benefit of reasonable inferences from the evidence, but not speculative inferences in his favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted); *see also*, *Diamond v. Nicholls*, 483 F. Supp. 3d 577, 590 (N.D. Ill. 2020) (granting summary judgment on claims for conspiracy to defraud, aiding and abetting fraud, and breaches of fiduciary duties, where record was devoid of evidence as to defendant's participation in alleged fraudulent and breaches). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *White*, 829 F.3d at 841.

To survive Michael's motion for summary judgment, plaintiff must establish there is a genuine issue of material fact as to whether Michael performed the actions he is accused of which contributed to plaintiff's injury. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, (1986). Moreover, the issue of fact must be "genuine." Fed. R. Civ. P. 56(c), (e). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.* 475 U.S. at 586.

Summary judgment is appropriate even when issues of the defendant's knowledge and intent are involved, if the respondent to a properly supported motion for summary judgment offers no specific facts to identify a genuine issue for trial or simply relies on mere allegations or denials. *See*, *In*

re George's Comet Motorcars, Ltd., 100 B.R. 403, 405 (Bankr. N.D. Ill. 1989), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). It is appropriate for the trial court to make a preliminary determination, on a summary judgment motion, of whether the plaintiff can demonstrate fraud. Ryan v. Wersi Elecs. GmbH & Co., 3 F.3d 174, 183 (7th Cir. 1993). When the responding party fails to provide evidence establishing an essential element of its case, the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 323.

      Here, plaintiff alleges McKinney was the victim of a series of wrongful actions by Anthony Panico ("Panico") and Vincent Palmieri ("Palmieri"). See, e.g., Michael Panico's Statement of Material Uncontested Facts in Support of Motion for Summary Judgment ("SOF"), ¶¶ 3-8. Plaintiff alleges McKinney gave Panico and Palmieri, or entities affiliated with them, over $28,000,000 over the course of twelve years. Id., ¶ 6. Plaintiff alleges McKinney believed he was investing that money to become an owner of various real estate properties or "projects," although he never saw (or requested) any documentation of such ownership until at least ten years after he began making the payments. Id., ¶¶ 3-5. Plaintiff makes this allegation although, by plaintiff's own admission, McKinney was a "successful businessman," i.e., one unlikely to give away more than $28,000,000 over the course of twelve years in exchange for some "partnership" or "ownership" interest without ever seeing some documented confirmation that he actually holds such ownership. See, id., ¶¶ 1-6.

      Plaintiff alleges Panico and Palmieri made various misrepresentations to McKinney regarding where his funds were being invested and what ownership interest in what "projects" he was receiving in exchange for such funds. See, e.g., id., ¶ 3. It alleges that, instead of giving ownership interests in the projects to McKinney as they indicated they would, Panico and Palmieri transferred McKinney's interests into entities owned by Panico's sons, Pasquale and Michael. See, id., ¶¶ 3-11. It alleges Michael was aware of his "role" in this scheme to divert McKinney of his "investments" and that he "knowingly and substantially" assisted Panico and Palmieri in their activities. See, id., ¶123-24.

3

However, critical to this motion is that there are no specific allegations in plaintiff's complaint as to Michael's purported conduct or compliance in these alleged activities. More to the point, and the reason why summary judgment is appropriate here, is that there is no evidence as to Michael's purported conduct or compliance in these alleged activities. The reason for this is simple: even assuming there is any substance to plaintiff's allegations against other defendants, the evidence as to Michael is unequivocal and uncontested: Michael, who was a student for the majority of the period described by McKinney, had no involvement whatsoever in any scheme to defraud McKinney of his so-called "investments."

Plaintiff alleges McKinney invested $3.9 million into Post Time Sports Bar and Grille LLC ("Post Time") between August 2016 and May 2018. Exhibit 1 to SOF, ¶ 62. It alleges the Post Time project was built, presumably during that time. *Id.* at ¶ 64. It alleges McKinney's investment was transferred to entities owned by Pasquale and Michael, and/or used to purchase a synagogue near the Post Time building, and/or used to construct the Post Time project. *Id.* at ¶ 64-66. None of these allegations, other than the allegation that (some portion of) McKinney's investment was transferred "to entities owned by Pasquale and Michael," implicate any actions taken by Michael. *Id.*

However, notwithstanding this utter lack of specificity as to Michael's involvement in the conduct complained of, plaintiff concludes Michael was aware of his role in Panico and Palmieri's "scheme" to take money invested by McKinney and transfer it to entities owned and controlled by him, and by causing such entities to accept such funds, with knowledge that they were fraudulently induced and wrongfully diverted. *See*, Exhibit 1 to SOF, ¶¶ 122-124. The problem with plaintiff's theory, and the reason plaintiff does not allege any specific facts to support it, is that no such facts exist.

Michael was a student for the bulk of the time plaintiff's allegations take place. SOF, ¶¶ 14-15. In 2007, when McKinney's story begins, Michael was a middle schooler at Oak Grove Elementary

4

School. *See*, SOF, ¶¶ 14-15; *see also*, Declaration of Michael Panico, attached as Exhibit 3 to SOF, ¶¶ 1, 4. From 2008 through 2012, Michael was an honor roll student and all-state football player at Carmel Catholic High School. *See*, Exhibit 3 to SOF, ¶ 5. From 2012 through 2017, Michael was a student at Northwestern University, where he played football and received his bachelor's degree with a double major in June 2017. *See*, SOF, ¶ 15; Exhibit 3 to SOF, ¶¶ 6-7. For a period of time after graduating from Northwestern, Michael worked part-time for Post Time Sports Bar and Grille LLC ("Post Time"), a restaurant owned by members of his family. *See*, SOF, ¶ 17, Exhibit 3 to SOF, ¶ 9.

McKinney alleges he contributed $3.9 million to finance the entire purchase and construction of Post Time between August 2016 and May 2018. *See*, Exhibit 1 to SOF, ¶¶ 60-67. He alleges he never received any ownership or return on his investment. *See*, Exhibit 1 to SOF, ¶¶ 64, 67. He alleges Panico and Palmieri transferred McKinney's monies invested in Post Time to LLCs held in Pasquale's and Michael's names, and used McKinney's monies for their own, personal use. *See*, *id.*, ¶¶ 83-84.

However, the timing does not support McKinney's allegations as to Michael's involvement with the so-called scheme to deprive McKinney of his investment in Post Time. Michael was not involved with any of the business and/or financial operations of Post Time until the Fall of 2017. *See*, SOF, ¶¶ 16-17. After graduating from college in June 2017, Michael began working part-time for Post Time in Fall 2017. *See*, SOF, ¶¶ 16-17. Michael's work for Post Time was primarily in marketing and advertising, *e.g.*, graphic design and video editing for Post Time's website and posts on social media. *See*, SOF, ¶ 20.

McKinney assumes Michael was involved in the "scheme" to divert McKinney of his alleged $3.9 million investment in Post Time because Michael was a manager of Post Time at the time McKinney filed his complaint in August 2021. *See*, Exhibit 1 to SOF, ¶ 87; *see also*, SOF, ¶ 24. However, Michael did not become a 50% owner and manager of Post Time until 2020—**two years after** the conduct McKinney complains of took place. SOF, ¶ 18; Exhibit 3 to SOF, ¶ 16; Exhibit 2 to SOF, ¶¶

5

62, 89. Michael did not have any managerial control or financial responsibility for Post Time until 2020 at the earliest. *See*, SOF, ¶¶ 24-29.

Plaintiff's complaint contains no specific facts to contradict Michael's testimony or otherwise support his theory. This is because plaintiff has no specific facts to contradict Michael's testimony or otherwise support its theory. The bottom line is, even if all the conduct McKinney complains of regarding Panico and Palmieri occurred, Michael had no awareness of it, and no participation in it. Therefore, for the reasons explained below, Michael cannot be liable for aiding and abetting, acting in concert, or conspiring, to deprive McKinney of his assets. Summary judgment should be entered in Michael's favor on each of these counts. *See, e.g.*, *Diamond*, 483 F. Supp. 3d 577, 598 (N.D. Ill. 2020) (granting defendant's motion for summary judgment on claims of conspiracy to breach fiduciary duty, aiding and abetting breach of fiduciary duty, conspiracy to defraud, and fraud, where record was devoid of evidence to support plaintiff's allegations).

## I. There Are No Facts to Support Plaintiff's Allegations That Michael Is Liable for Aiding and Abetting Fraud – Summary Judgment on Count II.

In Illinois, a claim for aiding and abetting includes the following elements: "(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." *Wolf v. Liberis*, 153 Ill. App. 3d 488, 496, 505 N.E.2d 1202 (1987) (recognizing the elements of claims for aiding and abetting and concert of action but failing to find liability where there were no allegations that the codefendant agreed to assist or substantially assisted in the commission of tort resulting in the plaintiff's injury).

"Anyone who aids and abets a fraud is 'also guilty of the tort of fraud.'" *Fifth Third Mortgage Co. v. Kaufman*, 934 F.3d 585, 588 (7th Cir. 2019), *quoting Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). There is a higher standard of both pleading and proof for a claim of fraud, including a claim

6

for aiding and abetting fraud. *Hefferman*, 467 F.3d at 601; *see*, F.R.C.P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity"). A plaintiff who does not allege and prove, specifically, what the defendant did to aid and abet the tortious actions cannot survive a motion for summary judgment. *See*, *Wolf*, 153 Ill. App. 3d at 497-98 (granting defendant's motion for summary judgment where plaintiff failed to allege and prove that defendant to aiding and abetting claim "in any way assisted or encouraged" the principal tortfeasor in causing plaintiff's injury).

Summary judgment is appropriate in the defendant's favor where the court finds insufficient evidence in the record from which a reasonable jury could infer the defendant knowingly and substantially participated in a fraud. *See*, *e.g.*, *Renovitch v. Kaufman*, 905 F.2d 1040, 1049 (7th Cir. 1990) (district court appropriately granted summary judgment for defendants for aiding and abetting securities fraud where record was devoid of evidence that defendants committed one of the "manipulative or deceptive" acts proscribed in the Securities Exchange Act, "let alone that he committed that act with scienter").

In order to sustain a claim for aiding and abetting, there must be *specific* conduct taken by defendant to assist the principal tortfeasor. *See*, *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 27-28, 799 N.E.2d 756, 767 (1st Dist. 2003), *as modified on denial of reh'g* (Nov. 10, 2003). In *Thornwood*, the Illinois First District Appellate Court recognized a plaintiff's potential claims for aiding and abetting a scheme to defraud, as well as aiding and abetting a breach of fiduciary duties, when it reversed the trial court's dismissal of the complaint. *Id.* at 18. The court found the complaint contained sufficient allegations to implicate the defendant's liability for aiding and abetting the principal's tortious activities. The court listed several, detailed allegations as to the defendant's specific conduct that constituted such aiding and abetting: communicating specific information to third parties; negotiating a purchase without disclosing the negotiations to plaintiff; drafting, negotiating, reviewing

7

and executing documents used to commit the fraud. *Id.* at 29. The court ruled that, while plaintiff may have an uphill battle proving that conduct, the complaint was not subject to dismissal on the pleadings. *Id.*

Here, there is no evidence whatsoever as to Michael's conduct in furtherance of Panico and Palmieri's allegedly fraudulent scheme. There is not a single allegation in the complaint nor any fact in the record as to *what* Michael purportedly knew about the alleged scheme; *when* he obtained or even possessed that knowledge; *what* his role was "as part of the overall activity to divert McKinney's investments," or *how* he "substantially assisted" Panico and Palmieri in depriving McKinney of his "investments." *See, e.g.*, Exhibit 1 to SOF, ¶¶ 122-124.

Moreover, Michael's Statement of Facts, supported by Michael's Declaration, contains unrebutted evidence that, even assuming the fraudulent scheme alleged in plaintiff's complaint took place, Michael played no part in it. Michael was high school age or younger for the first six years plaintiff alleges Panico and Palmieri were engaged in the fraudulent conduct, *i.e.*, 2007 through 2012. SOF, ¶¶ 14-15; Exhibit 3 to SOF, ¶¶ 1-5. For the next five years, Michael was an undergraduate at Northwestern University. Exhibit 3 to SOF, ¶¶ 6-7. Michael did not have an ownership interest in Post Time, ACV Properties, Panico Properties, or any of the other entities identified in the complaint until 2020, *i.e.*, two years after McKinney stopped making his "investments" with Panico and Palmieri. SOF, ¶¶ 3-4, 16, 24; Exhibit 3 to SOF, ¶¶ 8, 17-18. Michael was not aware of any scheme to transfer McKinney's money to any of the defendant entities. SOF, ¶ 43. Michael has never received or accepted any of McKinney's money. SOF, ¶ 41. Michael has not transferred any of McKinney's monies to or from Post Time, ACV, Panico Properties, or any other person or entity. SOF, ¶ 44.

As Michael was not knowingly aware of any fraud being committed on McKinney, he could not be liable therefor, as fraud is an intentional tort. *See, E. Trading Co. v. Refco, Inc.*, 229 F.3d 617, 625 (7th Cir. 2000), *amended on denial of reh'g* (Nov. 29, 2000). Without any facts to establish Michael's (i)

8

awareness of his role in the allegedly fraudulent scheme, and his (ii) knowing and substantial assistance in such scheme, Michael cannot be liable to plaintiff for aiding and abetting fraud. *See*, *e.g.*, *Sain v. Nagel*, 997 F. Supp. 1002, 1015 (N.D. Ill. 1998) (summary judgment in defendants' favor appropriate where plaintiff failed to put forth evidence by which a reasonable jury could find the defendants committed fraud by clear and convincing evidence). Therefore, summary judgment is appropriate in Michael's favor on Count II of plaintiff's Amended Complaint.

## II. Michael Is Entitled to Summary Judgment on Plaintiff's Count IV - Aiding and Abetting Breach of Fiduciary Duty.

To be liable for aiding and abetting a breach of fiduciary duty under Illinois law: "(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Diamond v. Nicholls*, 483 F. Supp. 3d 577, 595 (N.D. Ill. 2020), *quoting Timothy & Thomas LLC v. Viral Genetic, Inc.*, No. 6 C 1813, 2010 WL 3155972, at *22 (N.D. Ill. Aug. 10, 2010) (*citing Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 27-28, 799 N.E.2d 756 (1st Dist. 2003)); *see also* Restatement (Second) of Torts § 876 (1979). A defendant is not liable for aiding and abetting "without an underlying actionable tort that the defendant aided and abetted, resulting in his or her liability for that underlying tort." *Id.*; *see also*, *Premier Capital Mgmt., LLC v. Cohen*, 02 C 5368, 2008 WL 4378313, at *6-7 (N.D. Ill. Mar. 24, 2008) (granting summary judgment for defendants on claim for aiding and abetting breach of fiduciary duty where plaintiff failed to sustain its burden to show "concrete evidence of knowing and active involvement" on the part of alleged aiders and abettors).

In *Diamond*, the plaintiff claimed the defendant assisted third parties in breaching their fiduciary duties towards and defrauding the plaintiff under several theories of aiding and abetting and conspiracy, much like plaintiff here alleges against Michael. *Diamond*, 483 F. Supp. 3d at 580-86. The defendant's son formed and controlled several companies to sell and install synthetic turf surfaces for

9

sports arenas. *Id.* at 580-81. The defendant owned a company that manufactured the turf used by his son's companies. *Id.* at 581. The son's companies struggled financially and sought the support of investors. *Id.* One of the son's companies' biggest creditors was the manufacturing company owned by the father, the defendant. *Id.* The plaintiff invested large sums of money with the son's companies, which investments were lost when the son's companies became insolvent. The plaintiff sued the father, alleging the father participated in a scheme with his son to defraud the plaintiff, and aided and abetted his son in breaching his fiduciary duties to the plaintiff.

The father moved for summary judgment and supported his motion with affidavits and deposition testimony to show there was no support for the plaintiff's allegations that the defendant had participated in any alleged scheme. The father had made no misrepresentations to the plaintiff, did not solicit the plaintiff's investments, and was not even a shareholder or officer of the son's companies. *Id.* at 591-92. The court found that in light of the defendant's evidence in this regard, the plaintiff could not survive summary judgment on its claims. *Id.* at 595 ("No reasonable jury could find in favor of Diamond on such tenuous inferences. There is no evidence Sid [father] helped Mark [son] induce Diamond's investment in February 2016—through a breach of fiduciary duty or otherwise"). The court granted summary judgment in defendant's favor on all counts, as there was simply no evidence the defendant knew he was assisting his son to defraud the plaintiff. *Id.* at 596.

Here, McKinney's claims against Michael are even more tenuous and unsubstantiated than those alleged against the father in *Diamond*. McKinney asserts in a single, conclusory statement, that Michael "knowingly and substantially" assisted Panico and Palmieri in their scheme to "divert" McKinney's investments to others. *See*, Exhibit 1 to SOF, ¶ 139. However, there is no factual support for McKinney's conclusory allegations as to Michael's knowledge and assistance (let alone the allegations as to the underlying conduct). *See, e.g.*, *Saleh as Tr. of Nabil Saleh M.D. LTD Pension Plan v. Merch.*, 14-CV-09186, 2023 WL 2711435, at *5 (N.D. Ill. Mar. 30, 2023) (granting summary judgment

in defendant's favor on claims for fraud, unjust enrichment, civil conspiracy where the court found the record so one-sided in defendant's favor that it warranted a ruling as a matter of law). McKinney has not set forth any evidence establishing Michael's knowledge of any scheme to participate in any breach owed to him, let alone assistance in a scheme, let alone *substantial* assistance in such a scheme. Moreover, as set forth in Michael's Statement of Facts and Declaration, detailed above, and contrary to McKinney's conclusory allegations, Michael was not involved with the defendant entities at all, let alone with any scheme to deprive McKinney of his money during the period of time McKinney claims to have invested his money with Panico and Palmieri. *See*, SOF, ¶¶ 16, 18-19, 24-30, 33-38, 40-44. With a record so devoid of evidence to sustain McKinney's claims, summary judgment must be granted in Michael's favor.

### III. There Is No Evidence of Michael's Participation in a Common Scheme—Summary Judgment on Count XII for Civil Conspiracy.

Civil conspiracy is an intentional tort that requires proof that a defendant "knowingly and voluntarily participates in a common scheme to commit an unlawful act or a lawful act in an unlawful manner." *Diamond*, 483 F. Supp. 3d at 593 (N.D. Ill. 2020). There is no such thing as accidental, inadvertent or negligent participation in a conspiracy. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 64, 645 N.E.2d 888, 894 (1994). To succeed on a claim for civil conspiracy under Illinois law, the plaintiff must establish that 1) two or more persons formed an agreement for the purpose of accomplishing either an unlawful purpose or a lawful purpose using unlawful means; and 2) at least one of the co-conspirators performed at least one tortious act in furtherance of the agreement that caused an injury to the plaintiff. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007). "The agreement is a necessary and important element of this cause of action." *Id.*, quoting *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill .2d 102, 720 N.E.2d 242, 258 (1999). A defendant who acts innocently but nonetheless happens to aid the tortious purpose of another is not liable under the theory of civil conspiracy. *Id.*, quoting *Adcock* 164 Ill. 2d 54, 645 N.E.2d 888, 894 (1994).

Moreover, evidence of agreement alone is not enough, as the second element ensures that "[a] cause of action for civil conspiracy exists only if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort.'" *Johnson v. Dossey*, 878 F. Supp. 2d 905, 918 (N.D. Ill. 2012), *quoting Adcock*, 164 Ill. 2d at 63. Summary judgment is appropriate where a plaintiff fails to present any evidence or legal arguments as to the underlying elements of a civil conspiracy claim. *Siegel v. Shell Oil Co.*, 656 F. Supp. 2d 825, 836 (N.D. Ill. 2009), *aff'd*, 612 F.3d 932 (7th Cir. 2010). A conspiracy is almost never established by direct proof, and when shown by circumstantial evidence, such evidence must be clear and convincing. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 134, 720 N.E.2d 242, 258 (1999).

Here, there is no evidence that Michael, along with any other defendants, formed an agreement for the purpose of accomplishing an unlawful purpose or to accomplish a lawful purpose using unlawful means. *See*, *e.g.*, SOF, ¶¶ 40-44. To prevail on a claim for civil conspiracy, the plaintiff must show with particularity the circumstances constituting the conspiracy, such as when the purported agreement was made, or which individuals arranged the conspiracy. *See*, *Borsellino*, 477 F.3d at 509. Instead, McKinney merely alleges, generally, that the defendants "engaged in a conspiracy" and "acted in concert" to divert McKinney's investments. Exhibit 1 to SOF, ¶¶ 191, 192.

In contrast to plaintiff's complete lack of evidence to support the conspiracy, the record contains only evidence to the contrary. Michael had no involvement with the defendant entities during the period of time McKinney alleges he was making investments in those entities and those investments were diverted by Panico and Palmieri, and purportedly accepted by Michael. *See*, SOF, ¶¶ 14-18. Michael was not aware of McKinney's purported investments in Post Time, ACV, or Panico Properties. *See*, SOF, ¶ 42. Michael is not aware of any agreement to transfer McKinney's investments in Post Time, ACV, or Panico Properties to any other person or entity. *See*, SOF, ¶ 42-43. Michael has

12

not transferred any of McKinney's monies to or from Post Time, ACV, Panico Properties, or any other person or entity. *See*, SOF, ¶ 44.

Therefore, Michael is entitled to summary judgment on plaintiff's claim against him for civil conspiracy. *See*, *Johnson v. Dossey*, 878 F. Supp. 2d 905, 918 (N.D. Ill. 2012) (summary judgment appropriate for defendant where plaintiff failed to show a genuine issue of material fact existed with respect to her claim for civil conspiracy against defendants).

### IV. There Is No Evidence to Support Plaintiff's Claim That Michael Unjustly Retained a Benefit from Improper Conduct—Summary Judgment on Count XIV for Unjust Enrichment.

Under Illinois law, unjust enrichment is not a separate cause of action that, standing alone, justifies a claim for recovery. *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 631, 888 N.E.2d 1190, 1200 (1st Dist. 2008). Rather, it is a condition resulting from improper conduct "'such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct.'" *Alliance Acceptance Co. v. Yale Insurance Agency, Inc.*, 271 Ill. App. 3d 483, 492, 648 N.E.2d 971 (1995) (*quoting Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.*, 137 Ill. App. 3d 84, 90-91, 484 N.E.2d 349 (1985)). Therefore, addressing fraud in an unjust enrichment claim does not necessarily go beyond the pleadings. *Toushin v. Ruggiero*, 2021 IL App (1st) 192171, ¶ 80, 189 N.E.3d 1012, 1033, *reh'g denied* (July 29, 2021), *appeal denied*, 183 N.E.3d 872 (Ill. 2021)

To prevail on a claim based on a theory of unjust enrichment, a plaintiff must prove the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital*, 131 Ill. 2d 145 (1989), 545 N.E.2d 672 (citations omitted); *All. Acceptance Co.*, 271 Ill. App. 3d at 492, 648 N.E.2d at 976-77. "For a cause of action based on a theory of unjust enrichment to exist, there must be an independent basis that establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty." *Martis v. Grinnell*

*Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017, 1025, 905 N.E.2d 920, 928 (3d Dist. 2009). Where the underlying claim for fraud is deficient, the claim for unjust enrichment likewise fails. *See*, *e.g.*, *Mosiman v. BMW Financial Services NA, Inc.*, 321 Ill. App. 3d 386, 392, 748 N.E.2d 313, 318 (2001) (where plaintiff's claim for fraud under the Consumer Fraud Act failed, its claim for unjust enrichment based on that fraud likewise failed).

Here, McKinney's claim for unjust enrichment relies on the same allegedly improper conduct as the rest of his complaint, *i.e.*, the fraud and contract claims. For all the reasons identified above and set forth in Michael's Statement of Facts and Declaration, there is no evidence to support McKinney's allegations as to Michael's improper conduct. Consequently, summary judgment should be granted in Michael's favor on this claim with the rest of McKinney's claims. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (*citing Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well."). Michael is entitled to summary judgment on plaintiff's claim for unjust enrichment.

WHEREFORE, defendant Michael Panico asks that this Court enter judgment in his favor on Counts II, IV, XII and XIV of Plaintiff's Amended Complaint against him.

O'DONNELL CALLAGHAN LLC

By: */s/ Robert T. O'Donnell*
Robert T. O'Donnell, Attorney for
Defendant Michael Panico

Robert T. O'Donnell (ARDC# 3124931)
Hayleigh K. Herchenbach (ARDC# 6327026)
O'Donnell Callaghan LLC
28045 N. Ashley Circle, Suite 101
Libertyville, IL 60048
rodonnell@och-law.com
hherchenbach@och-law.com
(847) 367-2750