**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LARRY A. McKINNEY, JR., as Personal Representative of the Estate of Larry A. McKinney, Sr. and as Trustee of the Larry A. McKinney, Sr. Living Trust Dated October 5, 2017,<br><br>    Plaintiff,<br><br>v.<br><br>ANTHONY PANICO, individually and as trustee of the Dominic Alphonse Panico Trust Dated February 15, 2016, the Matea Ann Panico Trust Dated February 15, 2016, the Michael Anthony Panico Trust Dated February 15, 2016, the Pasquale Anthony Panico Trust Dated February 15, 2016, and the Santino Joseph Panico Trust Dated February 15, 2016; VINCENT PALMIERI; ACV PROPERTIES, LLC; ADESSO INVESTMENTS, LLC; AP CAPITAL MANAGEMENT, LCC; FPH LLC; FPH MANAGEMENT, INC.; PANICO PROPERTIES, LLC and POST TIME SPORTS BAR AND GRILLE, LLC,<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **No. 21-cv-4602**<br><br>**Honorable Andrea R. Wood** |

## DEFENDANTS' MOTION TO COMPEL PRODUCTION OF THE INVENTORY AND TAX RETURN FILED BY THE ESTATE OF LARRY A. MCKINNEY SR.

Defendants, Anthony Panico ("Panico"), ACV Properties, LLC, Adesso Investments, LLC,

AP Capital Management, LLC, FPH LLC, FPH Management, Inc., Panico Properties, LLC, and

Adesso Investments, LLC (collectively, the "Panico Defendants"), by and through their attorneys,

The Bernstein Law Firm, LLC, and pursuant to Federal Rule of Civil Procedure 37(a) and this

Court's May 29, 2024 order [Dkt. 155], respectfully move to compel the production of the probate

inventory and federal tax return filed by the Estate of Larry A. McKinney, Sr.  In support, the

Panico Defendants state as follows:

## BACKGROUND

On September 13, 2023, the Plaintiff filed his Second Amended Complaint [Dkt. 126], which is based upon Larry McKinney, Sr.'s ("McKinney, Sr.") allegations that he made various payments to Panico in exchange for ownership interests in certain entities and/or projects and, additionally or alternatively, as loans to Panico or third parties via Panico [*Id.* at ¶¶ 63; 83; 91; 99; 104]. Whether these payments were for loans or investments, McKinney, Sr. alleges, they were payments for which he expected to receive either an asset (*i.e.*, ownership interest in a business or real property) or repayment in return. In either case, they were not payments for gambling losses, as "McKinney was not a gambler." [*Id.* at ¶ 10].

The complaint McKinney, Sr. first filed before his death in January 2022 did not contain any allegations that any of the payments he made to Panico were for loans. [*See*, Complaint, Dkt. 1]. When he was alive, McKinney, Sr. claimed all of the payments he had made to Panico (and/or Panico-related entities) were payments that represented his investments in certain, identified "projects" in which McKinney, Sr. claimed ownership interests. [*Id.* at ¶¶ 1, 23]. McKinney, Sr. claimed Panico and Vincent Palmieri "diverted" McKinney, Sr.'s payments for his ownership interests into other entities for Panico's personal use. [*See, e.g., id.* at ¶¶ 1, 23, 208]. Therein lay the fraud, civil conspiracy, breach of fiduciary duty, etc. However, the allegations that some of McKinney, Sr.'s payments to Panico (and/or Panico-related entities) were for "loans" instead of payments for McKinney's ownership interests in "Projects" did not arise until after McKinney, Sr.'s death in January 2022. [*See, e.g.*, Dkt. 126, ¶¶ 6, 33, 107-108].

Numerous questions have arisen as a result of these inconsistent allegations, which defendants seek to answer through discovery—although of course, they cannot ask McKinney, Sr. directly. For example, which of the payments McKinney, Sr. allegedly made to Panico were made

as investments in exchange for ownership interests in which projects? How did McKinney. Sr. keep track of those payments, his investments, and his assets? How did he account for those assets, *e.g.*, to his accountants, financial planners, or the government, for his estate planning and/or other tax purposes? Did any of those assets he claims ownership in as a result of the payments he made to Panico depreciate over time? Did he account for any of that depreciation, and if so, how?

In an effort to explore possible answers to some of these questions, the Panico Defendants issued discovery requests to the Plaintiff on December 22, 2023 requesting: 1) tax returns filed by the Estate of Larry McKinney, Sr. and 2) a copy of the inventory of assets relating to the probate estate of McKinney, Sr. A copy of the Panico Defendants' Second Set of Requests for Production to the Plaintiff is attached as **Exhibit A**, see ¶¶ 17-18.

Initially, Plaintiff objected to both requests on the bases that neither are relevant to the lawsuit and the information sought is protected by the attorney-client privilege and/or the attorney work product doctrine. After exchanging various correspondence pursuant to FRCP 37, in the May 24, 2024 Joint Status Discovery Status Report, Plaintiff conceded the Estate's tax return and inventory contain information relevant to this lawsuit, but asserts the only relevant information is related to the valuation of this lawsuit, which information Plaintiff claims is protected under the attorney work product doctrine. [Dkt. 153, at 4].

## ARGUMENT

### I.    Relevance

"Relevancy . . . is broadly construed at the discovery stage of the litigation, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *In re Aircrash Disaster New Roselan, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 303 (N.D. Ill. 1997). The scope of relevance for purposes of

3

discovery is much broader than that for purposes of admissibility at trial. *Lukis v. Whitepages Inc.*, 535 F. Supp. 3d 775, 797 (N.D. Ill. 2021). Moreover, "[i]f relevance is in doubt, courts should err on the side of permissive discovery." *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 577 (N.D. Ill. 2004). A party suffers prejudice when an opponent's denial of relevant information and documents impairs its ability to prepare for trial. *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 973 (N.D. Ill. 2021).

Plaintiff claims the "only relevant information" in the Estate's tax return and inventory is "the value of this lawsuit." [Dkt. 153, p. 4]. However, the Panico Defendants are entitled to more than simply the value Plaintiff placed on this lawsuit at the time of McKinney, Sr.'s death, and certainly a complete probate inventory would contain more than such information. *See, e.g.*, State of South Carolina Inventory and Appraisement form, attached as **Exhibit B**. McKinney's estate inventory form would identify more than simply the value of this lawsuit. It would identify real estate McKinney, Sr. purported to own at the time of his death, and the value assigned to that real estate. *See*, Exhibit B, p. 2, Schedule A. It would identify notes receivables McKinney, Sr. purported to hold at the time of his death, *i.e.*, loans, and the value assigned to such loans. *See*, Exhibit B, p. 2, Schedule C. It would identify "other miscellaneous assets payable to the estate," *e.g.*, interests in partnerships or other business entities, and the value McKinney, Sr. assigned to such partnership interests. *See*, Exhibit B, p. 3, Schedule F.

This information is relevant to Plaintiff's claim that payments in the amount of millions of dollars were tendered to Panico in exchange for assets, whether ownership interests in entities, real properties, or notes receivable. If McKinney's estate identifies those purported assets, the Panico Defendants are entitled to see that information. If not, the Panico Defendants are entitled to see

4

that as well, as it may lead to the identification of other, relevant material to support their defenses to Plaintiff's allegations.

Additionally, the requests—which seek minimal documents in the known possession of the Estate—are proportional to the case. *See*, F.R.C.P. 26(b)(1). The two most important proportionality factors are the importance of the requested discovery and balancing the burdens against the benefits of requiring compliance. *Deal Genius, LLC v. O2COOL, LLC*, 682 F. Supp. 3d 727, 733 (N.D. Ill. 2023). The documents are relevant; therefore, they are important to the Panico Defendants' defense. The burden of producing these two documents necessarily in the Estate's control is nonexistent.

## II.    Attorney Work Product

Plaintiff claims the information in the Estate's inventory and tax return is protected by the attorney work product doctrine because both contain a valuation of the claims asserted in this lawsuit that "was created by and with the assistance of the Estate's lawyers" [Dkt. 153, at 4]. "The party seeking to invoke the protection of privilege, or discovery opponent, has the burden of establishing all of its elements." *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.,*, 145 F.R.D. 84, 86 (N.D. Ill. 1992). In this case, both the inventory—which presumably is a publicly filed document—and the tax return were prepared in the ordinary course of business irrespective of the litigation and, also, disclosed to third parties.

Initially, it should be noted that the Panico Defendants are not seeking documents that were prepared for use in preparing the tax return and inventory, for which there is significant case law addressing. For example, "a dual-purpose document—a document prepared for use in preparing tax returns *and* for use in litigation—is not privileged; otherwise, people in or contemplating litigation would be able to invoke, in effect, an accountant's privilege, provided that they used

5

their lawyer to fill out their tax returns." *United States v. Frederick*, 182 F. 3d 496, 501 (7th Cir. 1999). Although case law may allow for more extensive discovery, the Panico Defendants' requests are much more narrow and merely seek the actual inventory and tax return that were ultimately filed with third parties—and therefore are not attorney work product.

"The threshold determination of work product generally is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared for or obtained *because of* the prospect of litigation.' Therefore, documents that were prepared for other reasons, such as documents created in the ordinary course of business, cannot be withheld as work product." *SmithKline Beecham Corp. v. Pentech Pharms., Inc.*, 2001 WL 1397876, at *2 (N.D. Ill. 2001); *In re Air Crash Disaster at Sioux City, Iowa on July 19, 2989*, 133 F.R.D. 515, 519 (N.D. Ill. 1990) ("The Seventh Circuit has held that '[o]nly where the document is primarily concerned with legal assistance' is it work product" (citation omitted)).

Here, both the tax return and inventory filed by the Estate were prepared—and were required to be prepared and filed—regardless of the existence of this lawsuit. As the famous Benjamin Franklin quote goes: "in this world nothing can be said to be certain, except death and taxes." Unfortunately, both occurred to McKinney, Sr., but neither had anything to do with this lawsuit. Therefore, neither of the documents can be considered protected from discovery by the attorney work product doctrine.

Additionally, disclosure of the inventory and tax return destroyed attorney work product protection. The preceding is further illustrated in *Frederick*, supra:

> If a taxpayer involved in or contemplating litigation sat down with his lawyer (who was also his tax preparer) to discuss both legal strategy and the preparation of his tax returns, and in the course of the discussion bandied about numbers related to both consultations: the taxpayer could not shield these numbers from the Internal Revenue Service. This would not be because they were numbers, but because, being

6

intended (though that was not the only intention) for use in connection with the preparation of tax returns, they were an unprivileged category of numbers.

*Frederick*, 182 F. 3d at 501-02. In this case, the valuation provided in the inventory and tax return were intended for use in connection with tax return and, thus, unprivileged. Furthermore, waiver of work product protection occurs when material is "'disclosed in a manner which "substantially increases the opportunity for potential adversaries to obtain the information."'" *Vardon Golf Co. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 534 (N.D. Ill. 2003). In this case, the Estate presumably publicly filed the inventory of the Estate of Larry McKinney, Sr., thus, substantially increasing the likelihood that an adversary would come into possession of the inventory.

Therefore, the extent the inventory and/or the tax return filed by the Estate of Larry McKinney, Sr. are protected by the attorney work product doctrine, the protection has been waived and both are subject to disclosure during the discovery process.

## Local Rule 37.2 Statement

Counsel for the Panico Defendants consulted with counsel for the Plaintiff on February 20, 2024, March 18, 2024, April 17, 2024, May 17, 2024 and May 23, 2024. After good faith efforts to resolves differences, counsel are unable to reach an agreement.

WHEREFORE, Defendants, Anthony Panico, ACV Properties, LLC, Adesso Investments, LLC, AP Capital Management, LLC, FPH LLC, FPH Management, Inc., Panico Properties, LLC, and Adesso Investments, LLC respectfully request this Court enter an order compelling the Plaintiff to produce the inventory and tax return filed by the Estate of Larry McKinney, Sr. within seven days of entry of such order and for any further relief this Court deems fair and proper.

**[This space intentionally left blank. Signature page follows.]**

7

Respectfully submitted,

**ANTHONY PANICO, INDIVIDUALLY ACV PROPERTIES, LLC, ADESSO INVESTMENTS, LLC, AP CAPITAL MANAGEMENT, LLC, FPH LLC, FPH MANAGEMENT, INC., and PANICO PROPERTIES, LLC**

By: /s/ Louis D. Bernstein
        One of Their Attorneys

Louis D. Bernstein (ARDC No. 6192379)
James D. Trail (ARDC No. 6307197)
The Bernstein Law Firm, LLC
350 N. Clark Street, Suite 400
Chicago, Illinois 60654
312.645.6090
lbernstein@bernsteinlawchicago.com
jtrail@bernsteinlawchicago.com

8

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LARRY A. McKINNEY, JR., as Personal Representative of the Estate of Larry A. McKinney, Sr. and as Trustee of the Larry A. McKinney, Sr. Living Trust Dated October 5, 2017, <br><br> Plaintiff, <br><br> v. <br><br> ANTHONY PANICO, individually and as trustee of the Dominic Alphonse Panico Trust Dated February 15, 2016, the Matea Ann Panico Trust Dated February 15, 2016, the Michael Anthony Panico Trust Dated February 15, 2016, the Pasquale Anthony Panico Trust Dated February 15, 2016, and the Santino Joseph Panico Trust Dated February 15, 2016; VINCENT PALMIERI; ACV PROPERTIES, LLC; ADESSO INVESTMENTS, LLC; AP CAPITAL MANAGEMENT, LCC; FPH LLC; FPH MANAGEMENT, INC.; PANICO PROPERTIES, LLC and POST TIME SPORTS BAR AND GRILLE, LLC, <br><br> Defendants. | No. 21-cv-4602 <br><br> Honorable Andrea R. Wood |

**CERTAIN DEFENDANTS' SECOND SET OF**
**REQUESTS FOR PRODUCTION TO PLAINTIFF**

Defendants, Anthony Panico, ACV Properties, LLC, Adesso Investments, LLC, AP Capital Management, LLC, FPH LLC, FPH Management, Inc., Panico Properties, LLC, and Adesso Investments, LLC (collectively, the "Defendants"), by and through their attorneys, The Bernstein Law Firm, LLC, pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby request that Plaintiff respond to the following requests for production within 30 days after service and in accordance with the instructions and definitions set forth below. Please send all requested

documents to the offices of the Bernstein Law Firm, LLC, 350 North Clark Street, Suite 400, Chicago, Illinois, 60654.

## DEFINITIONS & INSTRUCTIONS

1. All terms used herein shall be construed in an ordinary, common sense manner, and not in a hyper-technical, strained, overly literal, or otherwise restrictive manner.

2. "Document" or "Documents" refers to any printed, typewritten, handwritten, electronic or recorded matter of any character including, but not limited to, correspondence, memoranda, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, including drafts and nonidentical copies. The term should be construed consistent with Federal Rule of Civil 34(a) and corresponding case law.

3. The term "Communicate" or "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise). This includes transmittal (a) by means of a document such as a letter; (b) by electronic means, such as e-mail; or (c) verbally, including in-person, by telephone or other mechanical means.

4. The phrases "relate to," "related to," or "relating to" mean consist of, refer to, reflect on, arise out of, or be in any way or manner legally, factually, or logically connected with the matter discussed, and are to be given their most expansive meaning so as to result in the greatest breadth of possible responses, and shall mean, at a minimum, reflecting, recording, referring to, concerning, disclosing, memorializing, analyzing, reporting, communicating, showing, discussing, underlying, supporting, proving, or constituting.

5. "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these document requests and information that might otherwise be construed as outside their scope.

- 2 -

6.   "Each" means each, every, and any.

7.   "Including" means "including, but not limited to"; "includes" means "includes, but is not limited to."

8.   "Person" or "persons" mean, without limiting the generality of its meaning, any natural person, group of natural persons (such as a committee or board of directors), corporation, partnership, company, sole proprietorship, unincorporated association, joint venture, and any other incorporated or unincorporated business, governmental, or public entity.

9.   The name "McKinney" means Larry McKinney, his employees, trusts, entities, agents, attorneys, representatives and any other persons operating on his behalf including, without limitation, Larry A. McKinney, Jr., as the personal representative of the Estate of Larry A. McKinney Sr. and as trustee of the Larry A. McKinney, Sr. Living Trust dated October 5, 2017.

10.   The name "Panico" means Anthony Panico and his agents, attorneys, representatives and any other persons working on his behalf.

11.   The name "Palmieri" means Vicent Palmieri and his agents, attorneys, representatives and any other persons working on his behalf.

12.   The "Relevant Time Period" means 2007 to 2019.

13.   The term "Project" or "Projects" means the real estate projects referenced throughout the Second Amended Complaint, including without limitation the Libertyville Shopping Center project; the Naples Garage Project; the Viking Polo project; the Polo Build to Suit project; the Post Time Sports Bar and Grille project; the OTB North project; and the Thorntons Gas Station project.

14.    The term "Oral Contract" means the oral contract referenced in paragraph 163 of the Second Amended Complaint.

15.    The terms "Loan" or "Loans" means the loans referenced in paragraphs 107 through 112 of the Second Amended Complaint.

16.    References to entities should be interpreted broadly to include the named entity and its affiliates, parents, subsidiaries, officers, directors, shareholders (both present and former), employees, and agents.

17.    Whenever appropriate in these topics, the singular and plural forms of words shall be interpreted interchangeably so as to bring within the scope of these requests any matter that might otherwise be construed outside their scope.

18.    These topics shall be construed to be inclusive rather than exclusive. For example, the past tense shall be construed to include the present or future tenses, and vice versa; the singular shall include the plural, and vice versa; "and" and "or" shall be construed both conjunctively and disjunctively; and "any" or "each" shall mean "each and every" as well as "any one."

19.    This request is continuing; you have a duty to supplement, amend, or correct any and all prior answers or responses as necessary.

## REQUESTS FOR PRODUCTION

1.    All non-privileged Documents relating to the Loans.

2.    All non-privileged Documents relating to the Projects.

3.    All non-privileged Documents relating to the Oral Contract.

4.    All non-privileged Documents relating to requests made by McKinney for financial records or information pertaining to the Projects, including without limitation, to Kim Rothman, Panico and/or Palmieri.

- 4 -

5. The Document referenced in paragraph 82 of the Second Amended Complaint.

6. All non-privileged Documents relating to the steps or actions McKinney took to ensure he or one of his nominees held an ownership interest in each of the Projects and/or was entitled to repayment under each of the Loans.

7. All non-privileged Documents referenced in paragraph 114 of the Second Amended Complaint.

8. All non-privileged Documents relating to McKinney's request that an LLC be created (as alleged in paragraph 122 of the Second Amended Complaint).

9. All non-privileged Documents listing, disclosing or referencing, directly or indirectly, McKinney's interests in the Oral Contract, the Projects and/or the Loans.

10. All Communications between McKinney and Kim Rothman.

11. All Documents relating to McKinney specifying the purposes for money he provided to Panico or his nominees.

12. All non-privileged Documents relating to Panico, Palmieri or their nominees use of money provided by McKinney for purposes other than specified by McKinney.

13. All non-privileged Documents relating to McKinney allegations that Defendants in this lawsuit fraudulently concealed certain actions (as referenced in paragraphs 113 though 134 of the Second Amended Complaint).

14. All non-privileged Documents relating to Plaintiff's allegation in paragraph 140(j) of the Second Amended Complaint that "McKinney was neither a gambler nor a sports fan."

15. All non-privileged Documents relating to McKinney's investments in sources other than the Projects or Loans between 2000 and his death including, but not limited to, investments in Panama, Puerto Rico, Taiwan and investments with Vivian Wong.

16.     All non-privileged Documents relating to investments made by entities in which McKinney held a greater than 10% equity position in sources other than the Projects or Loans between 2000 and his death including, but not limited to, investments in Panama, Puerto Rico, Taiwan and investments with Vivian Wong.

17.     Other than those already produced, any tax returns filed by or relating to McKinney or the Estate of McKinney from 2007 through the present including, but not limited to, inheritance tax returns.

18.     A copy of the inventory of assets relating to the probate estate of McKinney and any relating Documents sufficient to show the ownership of assets in which he held any interest, whether directly or indirectly or personally or through a trust or entity, at the time of his death and, in the case of his interests in the Projects or Loans, from 2007 through the present.

19.     All Documents, including Communications or notes of conversations, provided to or received by McKinney or his attorneys from the Offices of the United States Attorneys, any Assistant United States Attorney or any federal law enforcement agency, including any persons working on behalf of any of them, relating to Panico.

**[This space intentionally left blank. Signature page follows.]**

- 6 -

Respectfully submitted,

**ANTHONY PANICO, INDIVIDUALLY ACV PROPERTIES, LLC, ADESSO INVESTMENTS, LLC, AP CAPITAL MANAGEMENT, LLC, FPH LLC, FPH MANAGEMENT, INC., and PANICO PROPERTIES, LLC**

By: /s/ Louis D. Bernstein
       One of Their Attorneys

Louis D. Bernstein (ARDC No. 6192379)
James D. Trail (ARDC No. 6307197)
The Bernstein Law Firm, LLC
350 N. Clark Street, Suite 400
Chicago, Illinois 60654
312.645.6090
lbernstein@bernsteinlawchicago.com
jtrail@bernsteinlawchicago.com

## CERTIFICATE OF SERVICE

Louis D. Bernstein, an attorney, certifies that on December 22, 2023, he served a copy of the attached Certain Defendants' Second Set of Requests for Production to Plaintiff to:

> Jeffrey Scott Eberhard
> Chris Gair
> Blake Edwards
> Gair Gallo Eberhard LLP
> 1 East Wacker Drive
> Suite 2600
> Chicago, IL 60601
> 312-600-4900
> jeberhard@gairlawgroup.com
> cgair@gairlawgroup.com
> bedwards@gairlawgroup.com
>
> Robert T. O'Donnell
> Hayleigh K. Herchenbach
> O'Donnell Callaghan LLC
> 28045 N. Ashley Circle, Suite 101
> Libertyville, IL 60048
> rodonnell@och-law.com
> hherchenback@och-law.com
>
> Vincent L. Palmieri
> 28018 N. Ashley Circle
> Unit 105
> Libertyville, IL 60048
> Vpalm3434@gmail.com

by email.

*/s/ Louis D. Bernstein*

# Exhibit B

STATE OF SOUTH CAROLINA ) IN THE PROBATE COURT

COUNTY OF: )

**INVENTORY AND APPRAISEMENT**

☐ ORIGINAL
☐ AMENDED #
*(must restate the unchanged information from the original Inventory)*

IN THE MATTER OF:

CASE NUMBER:

(Decedent)

**File the original Inventory and Appraisement with the Probate Court within ninety (90) days following the fiduciary appointment.** A copy shall be sent to each interested person who has demanded it. A Proof of Delivery must be filed with the Court. The gross fair market value of all probate assets, regardless of location (whether in this state or elsewhere), should be listed as of the date of death. Continue on additional sheets if necessary. An Amended Inventory should be utilized for correcting, adjusting or adding to an original inventory, and *must restate the unchanged information from the original Inventory.* A qualified and disinterested appraiser may be employed to ascertain the value of any asset. If an appraiser is employed, his/her name and address must be indicated with the item or items he/she appraised.

---

## RECAPITULATION

| | Non-Probate (OPTIONAL) | Probate |
|---|---|---|
| Schedule A - Real Estate | | $_____ |
| Schedule B - Stocks and Bonds | | $_____ |
| Schedule C - Notes Due Decedent and Cash | | $_____ |
| Schedule D - Insurance on Decedent's Life - Part 1 - Payable to Estate | | $_____ |
| Part 2 - Payable to Beneficiary | $_____ | |
| Schedule E - Jointly Owned Property | $_____ | |
| Schedule F - Other Miscellaneous Assets Payable to Estate | | $_____ |
| Schedule G - Transfers During Decedent's Life | $_____ | $_____ |
| Schedule H - Powers of Appointment | $_____ | $_____ |
| Schedule I - Annuities and Retirement Accounts | $_____ | $_____ |
| **GROSS VALUE OF PROBATE ESTATE** | | $_____ |

The undersigned, being sworn, states: That the following schedules contain a complete and accurate inventory and appraisement of all probate real and personal property of this estate so far as the undersigned is informed; that he/she has estimated and/or appraised all listed property at its fair market value, according to the best of his/her knowledge and ability.

SWORN to before me this _____ day of
_____ , 20 _____

_____
Notary Public for South Carolina
My Commission Expires: _____

Personal Representative
Signature: _____
Print Name: _____
Address: _____
_____
Telephone (Work): _____
(Home): _____
(Cell): _____
(Email): _____

Attorney: _____
Address: _____
_____
Telephone: _____
Email: _____

Co-Personal Representative
Signature (if applicable): _____
Name: _____
Address: _____
_____
Telephone (Work): _____
Telephone (Home): _____
(Cell): _____
(Email): _____

FORM #350ES LF (04/2017)
62-2-805, 62-3-704, 62-3-706, 62-3-707, 62-3-708, 62-3-1203, 62-3-1204

Page 1 of 4

**WHEN COMPLETING THE FOLLOWING SCHEDULES LIST ALL PROBATE ASSETS, REGARDLESS OF LOCATION. ALL OUT-OF-STATE PROBATE ASSETS MUST BE DISCLOSED. NON-PROBATE PROPERTY NEED NOT BE DISCLOSED.**

**SCHEDULE A – REAL ESTATE.** List below any real estate in Decedent's name alone or tenants in common (not as joint with right of survivorship or tenants in the entirety). Describe each property by listing its full address, tax map number, deed book and page, and description consistently (for example: house, lot, buildings, acreage). Also list oil/mineral rights and time shares if it is real property. If none, so state. If the property is encumbered, list the full fair market value of the property here and the encumbrance on the Encumbrance Schedule below. (For jointly owned property **with right of survivorship**, you may list in Schedule E.)

| Item No. Description | % owned by Decedent | Fair Market Value | Value of Decedent's interest |
|---|---|---|---|
| 1. Tax Map Number: | | | |
| 2. Tax Map Number: | | | |
| 3. Tax Map Number: | | | |

TOTAL SCHEDULE A  $ _____
*(also enter under recapitulation, page 1)*

**SCHEDULE B – STOCKS AND BONDS.** List below all stocks and bonds in the Decedent's name alone or tenants in common (not as joint with right of survivorship). Identify each type of security and the number of shares. If none, so state. (For jointly owned property **with right of survivorship, you may list in Schedule E.**

| Item No. | Description | Face Value | Appraised Value |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |

TOTAL SCHEDULE B  $ _____
*(also enter under recapitulation, page 1)*

**SCHEDULE C – CASH, BANK ACCOUNTS, NOTES RECEIVABLES.** List all bank accounts owned by Decedent alone or as tenants in common (checking, savings, CDs, money market, brokerage, employment bonus, cash award, final paycheck, etc.), cash on hand, notes payable to Decedent, and survival action proceeds. If none, so state. List each separate account type and institution and last two digits of the account. (For jointly owned property **with right of survivorship,** you may list in Schedule E.)

| Item No. | Description | Value |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |

TOTAL SCHEDULE C  $ _____
*(also enter under recapitulation, page 1)*

**SCHEDULE D - LIFE INSURANCE** (If none, so state.)
Part 1 - Life Insurance – List the insurance on the life of the Decedent which is payable to the Estate.

| Item No. | Description | Value |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |

TOTAL PART 1  $ _____
*(also enter under recapitulation, page 1)*

(If more space is required, insert additional sheets of same size.)

Part 2 **(OPTIONAL)** - You may list here the insurance on the life of the Decedent which is payable to beneficiaries.

| Item No. | Description | Beneficiary | Value |
|----------|-------------|-------------|-------|
| 1. | | | |
| 2. | | | |
| 3. | | | |

**TOTAL PART 2**          $ _____
*(also enter under recapitulation, page 1)*

**SCHEDULE E - (OPTIONAL) JOINT WITH RIGHT OF SURVIVORSHIP**– You may list below any non-probate property jointly owned by the Decedent with another **with right of survivorship.** List each separate account type and institution and the last two digits of each account.

| Item No. | Description | Joint Owner(s) | Percentage Includible | Value of Decedent's Interest |
|----------|-------------|----------------|----------------------|------------------------------|
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |

                     $ 

**TOTAL SCHEDULE E**      _____
*(also enter under recapitulation, page 1)*

**SCHEDULE F – OTHER MISCELLANEOUS ASSETS PAYABLE TO ESTATE.** List below any tangible personal property, including household goods & furnishings, vehicles, boats/motors/trailers, mobile homes that are not de-titled (Include year/make/model/VIN, if applicable), airplanes, equipment, interest in a partnership or unincorporated business, articles or collections having either artistic or intrinsic value, including coins, guns, artwork, jewelry, etc., and any other miscellaneous probate items not listed elsewhere, including any digital assets. If none, so state. (For jointly owned tangible personal property **with right of survivorship**, you may list in Schedule E.)

| Item No. | Description | Value |
|----------|-------------|-------|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

**TOTAL SCHEDULE F**          $ _____
*(also enter under recapitulation, page 1)*

**NOTE: FOR SCHEDULES G, H, AND I. LIST VALUES ONLY IF PAYABLE TO ESTATE.**

**SCHEDULE G – TRANSFERS DURING DECEDENT'S LIFE.** List any transfers intended to take effect at death <u>if such property is payable to the Estate.</u> You may list in the "Optional" section below any non-probate transfers intended to take effect at death not payable to the Estate, including United States Government Bonds "Payable on Death," accounts which are "Transfer on Death," a trust created by Decedent in which income for life was retained by the Decedent, power to revoke or other incidents of ownership retained by the Decedent, lifetime transfers of real property in which Decedent retained life estate, etc. If none, so state.

List date and type of transfer and list total amount **payable to estate:**

| | | |
|----------|-------------|-------|
| 1. | | |
| 2. | | |

**(OPTIONAL)** describe and list amounts **not** payable to estate:

| | | |
|----------|-------------|-------|
| 1. | | |
| 2. | | |

**TOTAL SCHEDULE G**          $ _____
*(also enter under recapitulation, page 1)*

*(If more space is required, insert additional sheets of same size.)*

**SCHEDULE H – POWERS OF APPOINTMENT.** List property, both real and personal, over which Decedent possessed a Power of Appointment whether testamentary or otherwise, if such property is payable to the Estate. You may list property subject to such power if it was not payable to the Estate in the "Optional" section below. If none, so state.

Describe and list total amount **payable to estate**:

| | | |
|---|---|---|
| 1. | | |
| 2. | | |

**(OPTIONAL)** describe and list amounts **not** payable to estate:

| | | |
|---|---|---|
| 1. | | |
| 2. | | |

TOTAL SCHEDULE H                                             $ _____
*(also enter under recapitulation, page 1)*

**SCHEDULE I – ANNUITIES AND RETIREMENT ACCOUNTS (IRA's, 401(K), etc.).** List any annuities or retirement accounts owned by the Decedent and payable to the Estate. You may list in the "Optional" section below any accounts payable to a beneficiary which is not payable to the Estate.

Describe and list total amount **payable to estate**:

| | | |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |

**(OPTIONAL)** describe and list amounts **not** payable to estate:

| | | |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |

TOTAL SCHEDULE I                                             $ _____
*(also enter under recapitulation, page 1)*

**ENCUMBRANCES** (e.g., mortgages, liens, judgments, etc., **but not general debts of the estate**). List debts of the Decedent secured by assets on the above Schedules and describe the debt and the specific asset encumbered.

| Item No. | Schedule & Item Number Encumbered Thereby | Description & Amount |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |

TOTAL ENCUMBRANCES                                           $ _____

*(If more space is required, insert additional sheets of same size.)*

## CERTIFICATE OF SERVICE

I certify that on June 12, 2024, I caused a copy of Defendants' Motion to Compel Production of the Inventory and Tax Return Filed by the Estate of Larry A. McKinney Sr. to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this case.

*/s/ Louis D. Bernstein*