**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LARRY McKINNEY, JR., as Personal Representative of the Estate of Larry A. McKinney, Sr. and as Trustee of the Larry A. McKinney, Sr. Living Trust Dated October 5, 2017, | ) | Case No. 21-cv-04602 |
| Plaintiff, | ) | |
| v. | ) | |
| ANTHONY PANICO, *et al.*, | | |
| Defendants. | | |

**DEFENDANT POST TIME SPORTS BAR AND GRILLE LLC'S MOTION IN LIMINE TO BAR PLAINTIFF FROM OFFERING EVIDENCE OF DAMAGES IN EXCESS OF $77,834 AGAINST POST TIME**

Defendant, Post Time Sports Bar and Grille LLC ("Post Time") , by its counsel, O'Donnell Callaghan LLC, for its motion *in limine* to bar plaintiff from offering any evidence, testimony, argument, or otherwise referencing damages in excess of $77,834 pertaining to Post Time, states as follows:

Plaintiff's complaint alleges that McKinney paid Anthony Panico, Vincent Palmieri, or their designees $3.9 million for the Post Time project as part of a larger scheme to defraud McKinney of over $30 million. According to the complaint, McKinney claims he was promised a 49.5% stake in the Post Time project but was never documented as an owner, never received any received profits, and his principal was not returned. Plaintiff asserts that it "has a claim to [McKinney'] investments and ownership interest in the projects." Dkt. No. 126, ¶182. However, plaintiff has produced no evidence, admissible or otherwise, to support its claims for damages, save for a single $77,834 payment purportedly traced from AP Capital to Post Time by plaintiff's expert.

Aside from its expert report, plaintiff has not offered any reliable, non-speculative methodology to determine the amount of damages to which it believes it is entitled. If plaintiff is allowed to introduce, in any format, evidence of unsubstantiated amounts exceeding $77,834 or subjective calculations at trial, Post Time will be unfairly prejudiced and there is a serious risk that the jury will be mislead or, at the very least, confused. Plaintiff must therefore be barred from offering evidence of unproven or speculative damages greater than $77,834 as irrelevant and unfairly prejudicial.

Plaintiff's second amended complaint has four counts directed at Post Time, including fraud, civil conspiracy, fraudulent transfer, and unjust enrichment. Among the damages sought against Post Time, plaintiff seeks compensatory damages, *i.e.*, the value of plaintiff's alleged 49.5% stake in Post Time, for the fraud and civil conspiracy claims, return of McKinney's money that was allegedly paid to Post Time for the fraudulent transfer and unjust enrichment claims, and a constructive trust for the fraud claim.

To determine compensatory damages in a common law fraud (and, to the extent plaintiff can prove a civil conspiracy, which necessarily requires plaintiff prove the underlying tort of fraud), Illinois courts generally apply either the "benefit-of-the-bargain" approach as opposed to the "out-of-pocket loss" approach. *Giammanco v. Giammanco*, 253 Ill. App. 3d 750, 758 (2d Dist. 1993). Like its name, the out-of-pocket loss approach simply measures what the plaintiff paid for the promised value. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 337 (7th Cir. 2018). The benefit-of-the-bargain approach measures damages by determining the "difference between the value of the property as it is and what it would have been worth if the representations had been true." *Giammanco*, 253 Ill. App. 3d at 759. This measure of damages requires the plaintiff to prove that the value received by the plaintiff was not equal to the value of what they were promised. *Id.* If the plaintiff prevails at trial, it can recover the difference between what was promised and the actual

value received but must first prove its damages in order to recover, which cannot be based on "mere speculation, hypothesis, conjecture or whim." Plaintiff's evidence "must show a basis for computing damages with a fair degree of probability." *Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156, ¶92.

For the fraudulent transfer and unjust enrichment claims, plaintiff essentially must prove how much of McKinney's money was improperly transferred and/or retained by Post Time. *See* 740 ILCS 160/99 (plaintiff may recover judgment for the value of the asset transferred or the amount necessary to satisfy the creditor's claim, whichever is less); *Bd. of Managers v. Green Trails Improvement Ass'n*, 404 Ill. App. 3d 184, 193 (2d Dist. 2010) (damages for unjust enrichment are restitution). In other words, to the extent plaintiff prevails on these claims, it is entitled to the return of the moneys Post Time improperly received from McKinney. Similarly, to be entitled to a constructive trust, which presupposes that plaintiff prevails on its civil conspiracy claim against Post Time, plaintiff must also establish: (1) that a specific identifiable property exists to serve as a *res* upon which the constructive trust may be imposed; (2) that the *res* or its product is in the possession of a person who is to be charged as the constructive trustee. *Indeck Energy Servs. v. Depodesta*, 2021 IL 125733, ¶60. In other words, "[t]he proceeds of the alleged wrongful conduct must exist as an identifiable fund traceable to that conduct, such that it can become the *res* of the proposed trust." *Id.* If there is no identifiable fund that can be traced to the wrongful conduct and if the profits are speculative, a constructive trust is not available to the plaintiff. *See id.* (in the context of breach of fiduciary duty).

Here, plaintiff alleges that he was promised a 49.5% stake in the Post Time project in exchange for the payments he alleged made based on representations made by defendants Anthony Panico and Vincent Palmieri, but that he neither received profits from the business nor a return of his principal. Thus, in order to conduct the benefit-of-the-bargain analysis to determine plaintiff's damages, plaintiff must have proof of the value he would have been entitled to had he been given a

49.5% stake in the Post Time project, which necessarily includes both the building owned by Sports Bar Properties LLC and the operations that are managed by Post Time. To obtain a constructive trust, plaintiff must be able prove that McKinney's fraudulently obtained money is traceable to Post Time.

Plaintiff has offered no evidence of the value of the Post Time project at any time relevant to this action. The plaintiff has not produced any evidence, competent or otherwise, as to what his purported 49.5% interest in the Post Time project is worth and has not disclosed any expert opinions nor any experts in the field of business valuation who can provide such an opinion. Plaintiff has offered no valuation for the Post Time project, specifically the operations aspect of the Post Time project, which is the only portion of the project that is relevant to Post Time.[1] Therefore, plaintiff can only recover those amounts that can be specifically traced to Post Time. In this instance, plaintiff only has competent evidence from its funds tracing expert.

The only relevant evidence plaintiff can offer to support its claim that Post Time received any of McKinney's money is a report prepared by Lynsey Honegger. Dkt. No. 222-4. While Honegger has valuation experience, the scope of Honegger's retention was "to analyze certain of Plaintiff's claims against Defendants," and to respond to any comparable reports offered by defendants. *Id.* at pp. 1-2. Honegger was not retained to provide a valuation of Post Time or McKinney's purported 49.5% interest in the Post Time project. *Id.* Her report does not contain any valuation analysis. Instead, her report is confined to funds tracing. In the absence of any reliable means of determining the value of the operations part of the Post Time project at any relevant time, any evidence, testimony, argument, or reference to damages related to McKinney's purported 49.5% interest in the Post Time project would be speculative, at best, and given the complex nature of the

[1] Post Time, the entity, and the Post Time project are not synonymous. The building itself and the renovations to the building are not relevant to Post Time, as they are attributable to a separate entity, Sports Bar Properties LLC, which is not named as a defendant in this matter. Dkt. No. 199, pp. 4-8.

claims and number of defendants involved, could only serve to improperly mislead or confuse the jury.

To the extent that plaintiff would instead seek the return of any of McKinney's funds that were allegedly fraudulently obtained by Panico or Palmieri for purposes of the Post Time project, specifically for the operations of Post Time, plaintiff must be confined to offering evidence of those funds that can be specifically traced to Post Time. In other words, plaintiff must be confined only to presenting evidence, testimony, argument, or referencing only those funds that its expert was able to trace specifically to Post Time. As discussed in Post Time's motion for summary judgment, Honegger was only able to trace a single payment of $77,834 that was attributable to money McKinney gave to AP Capital, which then allegedly transferred those funds to Post Time for payroll purposes.

In all, Honegger claims to have traced $30,414,648 in payments from McKinney to the defendants or defendants' "designated nominees"; however, not a single payment was made directly to Post Time. Dkt. No. 218-4 at Exh. 4.1. Instead, Honegger traced a single $77,834 payment ostensibly made from AP Capital to Post Time for payroll. *Id.* at Exh. 5, Line 39; Exh. 5.2, Line 342. As Post Time argued in its motion for summary judgment, it is debatable that Honegger can support this conclusion.

In order to complete her tracing exercise with respect to Post Time, plaintiff provided Honegger with its list of checks to AP Capital that plaintiff believed were actually payments to the Post Time project, in addition to all of Post Time's bank statements, McKinney's bank statements, deposition transcripts, and more.[2] The 21 checks considered by Honegger were identified by

[2] Interestingly, Honegger claims that she did not find the five Post Time bank accounts to be "an account of interest," for purposes of her analysis. This begs the question as to how Honegger traced $77,834 to Post Time's payroll, particularly because she had access to Post Time's payroll bank account but did not review its records for her analysis. Honegger Rpt., p. 19 n.130, Exh. 5.2, line 342.

plaintiff in discovery as the universe of payments from McKinney attributable to the Post Time project and plaintiff admitted during summary judgment that these were the only checks it had identified as having a "purpose" of "Post Time." Dkt. No. 200-16 (plaintiff's discovery responses); Dkt. No. 222, ¶56 (plaintiff's admission response to Post Time's statement of facts). However, not a single one of the 21 checks was payable to Post Time, cashed by Post Time, or traced to Post Time's bank accounts by plaintiff's expert, with the exception of the single alleged transfer of $77,834 that Honegger traced from AP Capital to Post Time for payroll, but which was not specifically traced to a Post Time bank account. Given that Honegger was made aware of each of the 21 checks totaling nearly $2.8 million that plaintiff identified as being related to the Post Time project but was unable to trace them to Post Time except for $77,834, plaintiff cannot be permitted to present those checks as evidence of anything related to Post Time. The only thing linking these checks to Post Time, with the exception of $77,834, is a speculative belief held by the plaintiff.

Plaintiff must be limited to presenting evidence from Honegger regarding the single $77,834 payment that she purportedly traced to Post Time and $77,834 must be the ceiling of plaintiff's claim for compensatory damages, return of improperly retained funds, or a constructive trust. It is the only amount that their expert was able to trace to Post Time. Any amount above $77,834 is speculative. According to Rule 403, this court has the discretion to exclude evidence, even if it is relevant, if the probative value is outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury, among other reasons. Fed. R. Evid. 403; *United States v. LeShore*, 543 F.3d 935, 939 (7th Cir. 2008). In the context of Rule 403, "unfair prejudice" is "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note. Because the only reliable evidence plaintiff has of that McKinney's money that was paid to AP Capital but actually went to Post Time is Honegger's report, any other

evidence, including the 21 checks that plaintiff "believes" went to Post Time, would be highly prejudicial to Post Time and can only serve to confuse matters for the jury.

WHEREFORE, defendant Post Time Sports Bar and Grille LLC asks that this Court grant its motion *in limine* to bar plaintiff from offering any evidence, testimony, argument, or otherwise referencing damages in excess of $77,834 pertaining to Post Time.

O'DONNELL CALLAGHAN LLC

By:*/s/Robert T. O'Donnell*
Robert T. O'Donnell, Attorney for Defendant Post Time Sports Bar and Grille LLC

Robert T. O'Donnell (ARDC# 3124931)
O'Donnell Callaghan LLC
102 S. Wynstone Park Drive
North Barrington, Illinois 60010
rodonnell@och-law.com
(847) 863-2167